**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE: PETRO-SERVE, LTD.** | §<br>§<br>§ | **BANKRUPTCY CASE NO. 88-7888 SEG**<br>**ADVERSARY PROC. NO. 93-1024 SEG** |

---

| | | |
|---|---|---|
| **DANIEL-PRICE EXPLORATION CO.** | § | **APPELLANT** |
| | § | |
| **v.** | § | **CAUSE NO. 1:99CV341** |
| | § | |
| **H.S. STANLEY, JR., TRUSTEE; ALFORD** | § | |
| **OIL CORP., and YORKSHIRE ENERGY** | § | |
| **CORPORATION** | § | **APPELLEES** |

**MEMORANDUM OPINION AND ORDER
<u>AFFIRMING JUDGMENT OF BANKRUPTCY COURT</u>**

THE MATTER BEFORE THE COURT is the appeal of William B. Daniel, IV

("Daniel"), who has been granted leave to intervene in this cause and pursue this appeal by Order

dated March 26, 2003.  Daniel appeals the final judgment of the United States Bankruptcy Court

for the Southern District of Mississippi, Southern Division, entered July 7, 1999 in Adversary

Proceeding Number 93-1024, styled *H.S. Stanley, Jr., Trustee, Alford Oil Corp., and Yorkshire*

*Energy Corp., v. Daniel-Price Exploration Co.* (the "Adversary Proceeding").  Despite having

been granted an extension of time to do so, the Appellees, H.S. Stanley, Jr. (the "Trustee"),

Alford Oil Corp. ("Alford") and Yorkshire Energy Corporation ("Yorkshire"), have not filed a

brief responding to Appellant's arguments.  The Court's jurisdiction of this appeal is proper

pursuant to FED. R. BANK. P. 8001 and 28 U.S.C. § 158.  For the reasons explained below, the

judgment of the Bankruptcy Court will be affirmed.

DISCUSSION

This adversary proceeding, filed in the Bankruptcy Court on November 3, 1993, concerns Daniel-Price Exploration Company's ("DPEX") failure to assign a working interest in a certain oil well located in Oklahoma to Alford Oil Corporation ("Alford"). The Bankruptcy Court conducted a trial in February and March 1999, making the following relevant findings of fact and conclusions of law:

> DPEX and Alford entered into an agreement wherein Alford agreed to purchase a 16% working interest in an oil well located in Oklahoma for $225,712.15. Alford paid this amount to DPEX.
>
> Alford, in turn, agreed to sell the same interest to Petro-Serve, Ltd., when it came into possession of the interest, for $281,989.00. Petro-Serve paid this amount to Alford.
>
> Rather than assigning the 16% working interest to Alford, DPEX sold the interest to a third party, Spectrum Gas Systems, Inc., without informing Alford that it had done so.
>
> DPEX never assigned the interest to Alford.
>
> In the course of the Petro-Serve bankruptcy Trustee's investigation into the matter in 1989 through 1991, DPEX indicated that Alford was probably the majority interest owner in the well and that it intended to and was in the process of making the assignments to Alford. During this time, DPEX did not disclose that the working interest had already been assigned to Spectrum Gas Systems, Inc. and could not possibly be assigned to Alford.
>
> Alford and its co-Plaintiffs did not receive the benefit of their bargain by paying the expenses to drill and operate a well in which they never acquired any ownership interest. Conversely, DPEX received the benefit of retaining the interest and/or selling it to Spectrum Gas Systems, Inc. Thus, Plaintiffs established a material breach of contract and were entitled to $225,712.15 plus interest in damages.
>
> Plaintiffs' claims were not barred by any applicable statute of limitations; the conduct of DPEX amounted to fraudulent concealment sufficient to equitably toll the statute of limitations.
>
> Plaintiffs were not under a duty to investigate land records in Oklahoma to assure themselves that DPEX had not transferred to a third party the interest it was under

contract to assign to Alford and/or Petro-Serve.

DPEX's answers to interrogatories, filed June 21, 1991, constitute sufficient acknowledgment by DPEX of its obligation to deliver the assignments and assurance that such would be accomplished to begin the running of the statue of limitations anew.

The Issues on Appeal:

The Appellant's grounds for appeal fall into three general areas:

1.    Whether the Bankruptcy Court's judgment is supported by the evidence;

2.    Whether the Bankruptcy Court's judgment is supported by the applicable law; and

3.    Whether the Bankruptcy Court's order denying the Defendant's request to allow Kenneth W. Cory to be added as a defendant and certain evidentiary rulings were in error.

The Standard of Review:

In reviewing bankruptcy decisions, the Court uses the same standard of review generally applied by a federal court of appeals. *In re Webb,* 954 F.2d 1102, 1104 (5th Cir. 1992). The Court conducts a de novo review of the Bankruptcy Court's conclusions of law, and applies a clearly erroneous standard of review to the Bankruptcy Court's findings of fact. *Id; In re Cook,* 169 F.3d 271, 274 (5th Cir. 1999). Under the clearly erroneous standard, the reviewing court must defer to the Bankruptcy Court's findings of fact unless it is left with the definite and firm conviction that a mistake has been made. FED. R. BANK. P. 8013; *In re Cajun Elec. Power Coop.,* 150 F.3d 503, 513 (5th Cir. 1998).

The Bankruptcy Court's Factual Findings:

After reviewing the trial transcript and the documentary evidence presented at trial, it is the Court's opinion that the Bankruptcy Court's factual findings are consistent with the evidence presented at trial.  The Bankruptcy Court's findings of fact are entitled to this Court's deference

and will not be disturbed.

The Bankruptcy Court's Legal Conclusions:

Having affirmed the Bankruptcy Court's factual finding that there was no assignment from DPEX to Alford, the Court must now review the legal conclusions flowing from it, and DPEX's defenses to Alford's right to recover based on this finding.

**1.      Breach of Contract**

The Bankruptcy Court concluded that Alford and its co-Plaintiffs did not receive the benefit of their bargain by paying the expenses to drill and operate a well in which they never acquired any ownership interest.  Conversely, DPEX received the benefit of retaining the interest and/or selling it to Spectrum Gas Systems, Inc.  Thus, Plaintiffs established a material breach of contract and were entitled to $225,712.15 plus interest in damages.

DPEX objects to this finding because, in its view, it produced evidence that it did provide the assignment to Alford.  However, there was insufficient evidence produced at trial for the Bankruptcy Court to conclude that DPEX was correct in this contention.  When the Bankruptcy Court asked DPEX counsel if he had a copy of the assignment, counsel stated: "No, sir, I do not." Trial Transcript, pg. 405.  The assignment was never produced at trial, nor was there any testimony affirming its existence with any certainty.  Therefore, the Bankruptcy Court correctly concluded that DPEX had materially breached the contract with Alford by failing to make the assignment for which Alford had contracted and paid.

Further, although DPEX insists on characterizing the Bankruptcy Court's award of damages as an improper rescission of the contract, this argument is not well taken.  As noted by the Bankruptcy Court, this action was one for breach of contract seeking restitution as damages,

-4-

not rescission.  "Restitution may consist of returning to the plaintiff its investment in the
contract, so-called 'money-back' restitution."  *Alaska Pulp Corp. v. U.S.,* 59 Fed. Cl. 400, 415
(Fed. Cl. 2004) (citing *Mobil Oil Expl. & Prod. SE, Inc. v. U.S.*, 530 U.S. 604, 624 (2000)).  The
Bankruptcy Court properly awarded restitution in the amount Alford paid for an interest in the
well: $227,712.15, plus interest.

       **2.**      **Statute of Limitations**

      Next DPEX objects to the Bankruptcy Court's conclusions that Plaintiffs' claims were
not barred by any applicable statute of limitations because the conduct of DPEX amounted to
fraudulent concealment sufficient to equitably toll the statute of limitations and, in the
alternative, that DPEX had sufficiently acknowledged its obligation in 1991 to cause the
limitations period to begin running anew.

      The Bankruptcy Court did not find it necessary to choose between the Oklahoma and
Mississippi statutes of limitation,[1] as the outcome of its analysis would have been the same in
either instance. Opinion, pg. 13, n.10.  The Court has not been directed to a choice of law
provision in the contract sued upon, and the Court's examination of the contract revealed none.
Nevertheless, it is not necessary to conduct a choice of law analysis as to the question of the
applicable statute of limitation.  "Choice of law analysis becomes necessary only when there is a
true conflict between the laws of two or more states, each having an interest in the litigation."
*Zurich American Ins. Co. v. Goodwin,* 920 So.2d 427, 432 (Miss. 2006) (citing *Boardman v.
United Servs. Auto. Ass'n,* 470 So.2d 1024, 1038 (Miss. 1985)); *see also Chapman v. Thrasher*

---

[1]  For breach of contract causes of action, Oklahoma imposes a five-year limitation
period, 12 O.S. § 95, while Mississippi's limitation period is three years.  MISS. CODE §15-1-49.

*Trucking Co.,* 729 F.Supp. 510 (S.D.Miss. 1990) (stating that "[b]efore it becomes necessary that the court make a choice of law, it must appear that there is a conflict between the substantive law of the involved states as to a matter that would have a significant effect on the outcome of the case"). Although Mississippi applies the substantive law of the state having the most significant relationship to the litigation, it applies its own law in matters of procedure, including statutes of limitation. *Davis v. National Gypsum Co.* 743 F.2d 1132, 1134 (5th Cir. 1984)(citations omitted). Therefore, regardless of whether Oklahoma or Mississippi law applies to the substantive law of this case, the Mississippi statute of limitation will apply.

Alford's cause of action arose in February 1987 and this lawsuit was filed in 1993, which is well outside the three-year statute of limitations applicable to breach of contract actions. The Bankruptcy Court found however, that equitable tolling based on fraudulent concealment of the claim tolled the statute of limitations, thus the Trustee's action was filed timely. The Bankruptcy Court relied on the Trustee's testimony that beginning in 1989 the Trustee received assurances from DPEX representatives that the assignment would be forthcoming and that DPEX was in the process of acquiring the interest from third parties who owed it to DPEX. However, DPEX never disclosed that the interest had been sold to Spectrum and it would be impossible for DPEX to convey the interest to Alford.

In Mississippi, fraudulent concealment of a cause of action tolls its statute of limitations. *Robinson v. Cobb,* 763 So.2d 883, 887 (Miss. 2000); MISS. CODE § 15-1-67. The Court is to apply a two-prong test for fraudulent concealment claims: A plaintiff must demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was performed on plaintiff's part to discover the claim. *Stephens v. Equitable Life*

*Assurance Soc'y of the U.S.*, 850 So.2d 78, 84 (Miss. 2003). "There must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." *Sanderson Farms Inc. v. Ballard,* 917 So.2d 783, 790 (Miss. 2005) (citations omitted).

The evidence relied upon by the Bankruptcy Court indicates that although DPEX took the affirmative action of assuring the Trustee that it was working on the assignment, the evidence does not show that the Trustee was unable to discover the claim because of the acts of DPEX. The Trustee had been aware since 1988 that Alford did not have the assignment from DPEX. DPEX's failure to make the assignment is the basis for the Trustee's claims in this adversary proceeding. The only reasons cited by the Trustee for his failure to file suit earlier were DPEX's deceptive assurances about the assignment and the size and nature of the debtor company. The Trustee does not show that DPEX's actions prevented him from discovering the breach of contract claim. The evidence showed that the "unknown" was the fact that DPEX had sold the interest to Spectrum. This fact would have affected the Trustee's choice of remedies for DPEX's breach of contract, but it did not conceal the cause of action itself. Another indication that fraudulent concealment is inapplicable is that there was no due diligence required of the Trustee to discover the claim; he knew beginning in 1988 that DPEX had breached the contract by failing to make the assignment to Alford. In the Court's view, the Trustee failed to establish either part of the two-prong test for application of fraudulent concealment to equitably toll the statute of limitations.

However, the Court agrees with the Bankruptcy Court's finding that the statute of limitations began running anew when DPEX acknowledged that Alford was entitled to the assignment and that DPEX "is in the process of completing the paperwork to make the

assignments to Alford." Trustee's Trial Exh. 1-J. This statement was contained in DPEX's response to interrogatories filed on June 21, 1991, signed by William B. Daniel, IV on June 17, 1991 on behalf of DPEX. Pursuant to MISS. CODE § 15-1-73, the bar of the statute of limitations is removed when, in an action on a contract, the debtor makes a sufficiently specific written and signed acknowledgment or promise to perform. *See id*. and *Harrison Ent., Inc. v. Trilogy Communications, Inc.*, 818 So.2d 1088 (Miss. 2002). Thus, the Trustee's action, filed within three years of June 17, 1991, was timely.

### 3. The Trustee as the Real Party in Interest and the Settlement Agreements

DPEX argues that the Bankruptcy Court erred in allowing the Trustee to pursue this cause of action. According to DPEX, the Bankruptcy Court based its decision on its interpretation of the following language from the settlement agreement:

> Yorkshire, and to the extent necessary, its predecessors-in-interest, affiliates and successors-in-interest will assign the Oil and Gas Leasehold Interest to the Trustee in accordance with the previously written or oral drilling, operating and other such agreements entered into by Yorkshire's predecessors and Petro-Serve and/or Magnolia.

In the Court's opinion, this language does indeed transfer the right to pursue this cause of action to the Trustee. The Trustee's breach of contract action is based on a drilling agreement entered into by Yorkshire's predecessor, Alford. Furthermore, the Court agrees that the November 1991 settlement agreement (Trial Exh. P-1E) did not bar the Trustee's claims in this Adversary Proceeding.[2] Similarly, a May 30, 1990 Compromise and Settlement Agreement

---

[2] DPEX refers to a "Settlement Agreement and Release" dated May 9, 1990, Defendant's Trial Exhibit 21-B. However, Defendant's Trial Exhibit 21-B appears to be the Second Amended Complaint in *D-PEX Operating Co. v. Alford Oil Corp., et al.*, Cause no. CIV-90-057-S in the United States District Court for the Eastern District of Oklahoma. The bankruptcy clerk's transmittal notice states that Defendant's Trial Exhibit No. 21-A, Settlement Agreement

(Trial Exh. 3-D) contains no mention of DPEX or the oil well at issue here; therefore, any release therein would have no effect on the Trustee's claims against DPEX.

4.      **The Order Denying Defendant's Request to Allow Kenneth W. Cory to Be Added as a Defendant**

The standard for reviewing a decision that an absent party is not indispensable is the abuse of discretion standard. *Bank One Texas N.A. v. Arcadia Financial Ltd*. 219 F.3d 494, 497 (5th Cir. 2000). The Bankruptcy Court did not abuse its discretion in finding that Kenneth W. Cory, an interest owner and operator of the well in question, was not an indispensable party under Fed.R.Civ.P. 19. "It is obvious that Rule 19 does not contemplate joinder of any party who might possibly be affected by a judgment in any way." *Shelton v. Exxon Corp*., 843 F.2d 212, 218 (5th Cir. 1988). A party is indispensable only if the claims raised cannot be adjudicated without it. *Id,* citing *Bourdieu v. Pacific Western Oil Co.,* 299 U.S. 65 (1936). Testimony at trial established that Cory purchased interests in the Drilling Unit in which the well in question was located long after DPEX sold its interests to both Alford and Spectrum Gas Systems, Inc. *See* Trial Transcript, pgs. 272-284. This lawsuit is concerned with the Trustee's rights against DPEX, which could be and were fully determined between them, without prejudice to Cory's interests. The Court finds no error in the Bankruptcy Court's order denying Defendant's request to add Cory as a defendant in this case.

5.      **The Order Denying Defendant's Motion to Withdraw Admission**

On the morning of trial, DPEX filed a Motion to withdraw its admission that it had never made the assignment to Alford. The basis of this request was DPEX's assertion that it had just

---

& Release, is "not part of our Court record and [is] not included with this Record on Appeal."

learned of personnel who remembered seeing evidence of an assignment to Alford.  The

Bankruptcy Court denied the request "because this case has been in this Court too many years for

somebody to sit around and sleep on something they should have done, if they should have done

it at all, and I don't believe the person is in the courtroom that you are trying to ... make a change

on the Admission with."  Trial Transcript, pg. 402.  After the bankruptcy judge left the

courtroom to allow DPEX to make its record, counsel stated that Alford's president, who had

been deposed four months prior, specifically recalled the assignment, because he remembered

talking to another Alford employee about the sufficiency of the assignment.  Trial Transcript, pg.

406.  Further, another Alford employee "has no recollection of not having received the

assignment."  *Id*. at 406-07.  Nevertheless, counsel could not produce the assignment itself:

> THE COURT:          Have you got a copy of the assignment?
>
> COUNSEL:            No, sir, I do not.

Trial Transcript, pg. 405.

The admission - that there was no assignment to Alford - was the central issue in this

case.  DPEX was able to introduce voluminous records and testimony at the two-day trial, much

of which was aimed at persuading the trial court that the assignment had been made.  Under these

circumstances, DPEX suffered no prejudice, nor was there any resulting disservice to the

presentation of the truth at trial. *See In re Guardian Trust Company* 260 B.R. 404, 411

(S.D.Miss. 2000) (citations omitted).   The Court finds no abuse of discretion in the Bankruptcy

Court's ruling.

<u>CONCLUSION</u>

Having reviewed the Bankruptcy Court's findings of fact, the Court finds sufficient evidence in the record to prevent clear error.  The Court having also independently determined the correctness of the ultimate legal conclusions adopted by the Bankruptcy Court on the basis of the facts found, the Court finds no basis for reversal of the Bankruptcy Court's final judgment.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the final judgment of the United States Bankruptcy Court for the Southern District of Mississippi, Southern Division, entered July 7, 1999 in Adversary Proceeding Number 93-1024, styled *H.S. Stanley, Jr., Trustee, Alford Oil Corp., and Yorkshire Energy Corp., v. Daniel-Price Exploration Co.* is **AFFIRMED**. This appeal is **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 9th day of March, 2007.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE